UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CASE NO. 4:05-CV-186

**MITCHELL L. JACKSON**                                                                 **PLAINTIFF**

**V.**

**RON HERRINGTON, et al.**                                                          **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

This matter is before the court upon a motion by Plaintiff for summary judgment on Counts III and IV of his Amended Complaint (DN 42) and upon a cross-motion by the Defendants for summary judgment (DN 46) on the same counts. Fully briefed, this matter is ripe for decision. For the following reasons, the Plaintiff's motion for summary judgment is **DENIED** and the Defendants' motion for cross-summary judgment is **GRANTED**.

**I. FACTS**

The Plaintiff has brought this civil rights action pursuant to 42 U.S.C. § 1983 against the Henderson County Detention Center ("HCDC") Jailer and other HCDC employees. This is an official capacity suit. The Plaintiff alleges that he was strip-searched in violation of his Fourth and Eighth Amendment rights when he transferred to the HCDC from the Clark County (Indiana) Jail for temporary housing. When the Plaintiff complained about the intake strip-search, the Jailer responded: "Welcome to Kentucky." It is undisputed that the HCDC automatically strip-searched all inmates transferred from other detention facilities without regard to each inmate's individual circumstances - such as what type of crime the transferred inmate had originally committed or whether that inmate had access to the public during his transfer. The parties have filed cross-motions for summary judgment regarding the constitutionality of this policy.

## II. LEGAL STANDARD

In order to grant a motion for summary judgment, the Court must find that the pleadings, together with the depositions, interrogatories and affidavits, establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. The moving party bears the initial burden of specifying the basis for its motion and of identifying the portion of the record which demonstrates the absence of a genuine issue of material facts. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party themselves thereafter must produce specific facts demonstrating that a genuine issue of fact exists for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

Although the Court must review the evidence in the light most favorable to the non-moving party, the non-moving party is required to do more than simply show that there is some "metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Co., 475 U.S. 574, 586 (1986). The Rule requires the non-moving party to present "specific facts showing there is a genuine issue for trial." Fed. R. Civ. P. 56(e). "The mere existence of scintilla of evidence in support of the [non-moving party's] position will be insufficient, there must be evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477. U.S. at 252.

## III. ANALYSIS

The Plaintiff contends that the blanket strip-search policy discussed above violated his Fourth and Eighth Amendment rights; his rights protected by Section 10 of the Kentucky Constitution; the Interstate Compact on Corrections, K.R.S. 196.610; and his procedural due process rights. The Court will address each of these arguments in turn.

**A. The Fourth Amendment / The Eighth Amendment**

The Plaintiff seems to argue that his strip-search violated his rights against unreasonable search and seizure under the Fourth Amendment and cruel and unusual punishment under the Eighth Amendment. With regard to the Plaintiff's Eighth Amendment claim, the Defendants are entitled to judgment as a matter of law because the Plaintiff has not suggested that he was subjected to any physical injury as a result of his strip-search. Adams v. Rockafellow, 66 Fed. Appx. 584 (6th Cir. 2003).

The Court now turns to the Plaintiff's Fourth Amendment claim. In Bell v. Wolfish, the Supreme Court considered whether a prison's policy of strip-searching pretrial detainees following a contact visit with persons outside the prison violated the detainees' Fourth Amendment rights. 441 U.S. 520 (1979). In Bell, the Court stated:

> The test of reasonableness under the Fourth Amendment is not capable of precise definition or mechanical application. In each case, it requires a balancing of the need for the particular search against the invasion of personal rights that the search entails. Courts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it was conducted.

Id. at 559. Using this standard, the Court concluded that the strip-search policy was reasonable because "[a] detention facility is a unique place fraught with serious security dangers...[and the] smuggling of money, drugs, weapons, and other contraband is all too common an occurrence..." Id. Following Bell, the Sixth Circuit held that a policy which required prisoners to be strip-searched *prior* to a transfer did not violate the Fourth Amendment because it was reasonable in light of the fact that "the risk of contraband traveling from one prison to another is real, and presents a significant threat to prison security." Watsy v. Ames, 1988 U.S. App. LEXIS 3775 *7 (6th Cir. 1988)(unpublished). The following year the Sixth Circuit stated that Bell authorizes

3

"particularized searches where objective circumstances indicate such searches are needed to maintain institutional security." Masters v. Crouch, 872 F.2d 1248, 1255 (6th Cir. 1989).

Since Crouch, at least three district courts, including this one, have addressed the constitutionality of various strip-search policies. In Richerson v. Lexington, the court held that a detention facility's policy to strip-search all pretrial detainees upon return from a court appearance was constitutional since "the pretrial detainees, including those charged with minor, nonviolent offenses, are kept in a detention center's general population prior to arraignment...and are thereafter put in a position where exposure to the general public presents a very real danger of contraband being passed to a detainee..." 958 F. Supp. 299 (E.D.Ky. 1996). Based on the same reasoning, the district court in Black v. Franklin County dismissed the claims of inmates and/or pretrial detainees who were strip-searched after returning to jail from work release or from court appearances finding that those searches did not violate the plaintiffs' constitutional rights. 2005 U.S. Dist. LEXIS 26362 (E.D. Ky. 2005). Finally, in Sutton v. Hopkins County, this Court held that a detention center's policy of strip-searching all transferred detainees was constitutional because it was reasonable under the circumstances. 2007 U.S. Dist. LEXIS 3150. Specifically, the Court observed:

> A detainee who has been incarcerated in another facility has potentially been exposed to contraband, especially if the facility has lenient procedures with respect to court appearances, contact visits, medical programs, and work programs. Additionally, just as in Richerson, detainees that are transported from one facility to another are transported through areas to which the public may have access. Therefore, these contacts outside of the jail provide opportunities for transferees, even those charged with non-violent, non-drug related offenses, to obtain contraband before they enter the...[j]ail.

Sutton at *15. The Court further noted that "[i]n the case of a transferred detainee, [a] detention facility is unaware of the security practices of the other facility and has absolutely no control over the transporting officer who supervised the detainee during transport." Id. at *16.

The Court finds no meaningful distinction between the HCDC policy at issue here and the policies upheld by the Sixth Circuit in Watsy and by this Court in Sutton. The objective circumstances surrounding the transfer of every inmate from one detention facility to another give HCDC officials the reasonable suspicion necessary to conduct intake strip-searches on inmates transferred into HCDC. HCDC's legitimate security interests outweigh the privacy rights of these inmates. Thus, the Court holds that the Defendants are entitled to summary judgment on the Plaintiff's Fourth Amendment claim.

**B. Section 10 of the Kentucky Constitution**

The Plaintiff also claims that HCDC's blanket policy of strip-searching all transferred inmates violates Section 10 of the Kentucky Constitution. Section 10 of the Kentucky Constitution, like the Fourth Amendment of the United States Constitution, protects individuals from unreasonable searches and seizures. Kentucky courts recognize that Ky. Const. § 10 provides no greater protection than does the Fourth Amendment. See, e.g., Overstreet v. Lexington- Fayette Urban County Gov't, 305 F.3d 566 n. 5 (6th Cir. 2002)(citing LaFollette v. Commonwealth, 915 S.W.2d 747, 748 (Ky. 1996)). Because, as discussed above, the Fourth Amendment does not protect the Plaintiff from the type of strip-search at issue here, the Defendants are entitled to summary judgment on this claim as well.

**C. The Interstate Compact on Corrections**

The Interstate Compact on Corrections ("ICC") is an agreement between several states which provides for the exchange and housing of prisoners on a reciprocal basis. The ICC has been adopted by both Kentucky and Indiana. K.R.S. 196.610; I.C. 11-8-4. The Plaintiff argues that HCDC's blanket strip-search policy violates Article IV(e) of the Interstate Compact on Corrections

("ICC") which states:

> All inmates who may be confined in an institution pursuant to the provisions of this compact shall be treated in a reasonable and humane manner and shall be treated equally with such similar inmates of the receiving state as may be confined in the same institution. The fact of confinement in a receiving state shall not deprive any inmate so confined of any legal rights which said inmate would have had if confined in an appropriate institution of the sending state.

The Plaintiff argues that he would not have been subjected to an intake strip-search if he remained in the Clark County (Indiana) Jail or had been transferred to another Indiana detention facility.

In Vigue v. Underwood, the Kentucky Court of Appeals considered the effect of Article VI(e) upon the rights of a Virginia inmate who was being housed in a Kentucky correctional facility. 139 S.W.3d 169 (Ky Ct. App. 2004). The inmate argued that, under Article VI(e), the Kentucky Department of Corrections was required to apply Virginia prison disciplinary rules to his disciplinary hearing. The court disagreed and held that Article VI(e) does not mandate a receiving state apply each sending state's policies and procedures. The court reasoned:

> The purpose of the ICC is to develop and execute "programs of co- operation for the confinement, treatment and rehabilitation of offenders with the most economical use of human and material resources." To achieve this purpose, the ICC must facilitate inmate transfers, not create obstacles to them. Requiring [a receiving state] to learn and apply policies and procedures of every state from which [it] has received an inmate under the ICC would create administrative burdens that would likely lessen [a receiving state's] desire to accept inmates from other states. This would create obstacles to interstate transfer, thus thwarting the ICC's purpose.

139 S.W. at 172. See also Jaben v. Moore, 788 F. Supp. 500, 503-04 (D.Kan. 1992) (rejecting claim that ICC required application of sending state's custody-classification guidelines); Cranford v. State, 471 N.W.2d 904, 905 (Iowa.Ct.App. 1991) (holding that ICC did not require application of sending state's disciplinary rules); Glick v. Holden, 889 P.2d 1389, 1393 (Utah.Ct.App. 1995) (denying prisoner's claim that he was entitled to benefit of policies and procedure of sending state); and Daye

v. State, 171 Vt. 475, 769 A.2d 630, 636 (Vt. 2000) (holding that Vermont inmates were not entitled, under the ICC, to the same visitation policy in out-of-state correctional facilities that applied in Vermont facilities).

Thus, even if the Court were to accept the Plaintiff's unsupported position that he would not have been subjected to a similar strip-search had he been transferred to a detention facility in Indiana rather than Kentucky, in light of Vigue, the Court concludes that the provisions of Article IV(e) of the ICC were not violated when the Plaintiff was subjected to a strip-search upon his arrival at the HCDC.

**D. Procedural Due Process**

Finally, the Plaintiff argues that the Defendants violated his procedural due process rights by "denying his liberty interest against the unnecessary intrusion of a strip search on the basis of assumptions, guesses, or whim, without any basis in fact." The Fourteenth Amendment protects an individual from deprivation of life, liberty or property without due process of law. "Those who seek to invoke its procedural protection must establish that one of these interests is at stake." Bazzetta v. McGinnis, 430 F.3d 795, 801 (6th Cir. 2005) (quoting Wilkinson v. Austin, 545 U.S. 209, 221 (2005)). The Plaintiff contends that the liberty interests that protect the Plaintiff from unnecessary and unreasonable strip-searches are founded upon (1) Section 10 of the Kentucky Constitution; 2) the Interstate Corrections Compact, K.R.S. 196.610; and 3) the "minimum standards established in 501 KAR 3:120 by authority of K.R.S. 441.055(1)(1).

Because the Court has already concluded that the strip-search at the HCDC did not violate the Plaintiff's rights under either Section 10 of the Kentucky Constitution or Article IV(e) of the Interstate Corrections Compact, the Court need only consider whether 501 KAR 3:120, Section

(3)(b), an administrative regulation promulgated by the Kentucky Department of Corrections, creates a liberty interest that protects the Plaintiff from the type of intake strip-search he was subjected to at the HCDC. This regulation provides as follows:

> A prisoner may be strip searched only on reasonable suspicion that is based upon the existence of objective information that may predict the likelihood of the presence of a weapon, drugs, or other contraband concealed on a particular prisoner. Reasonable suspicion shall be based upon one (1) or more of the following:
> 1. A current offense involving felony violence, drug charges, or fugitive status;
> 2. A criminal history of offenses involving the use of a weapon or the possession of contraband;
> 3. Institutional behavior, reliable information, or history that indicates possession or manufacturing of contraband, the refusal to submit to a clothed pat down search, or a clothed pat down search reveals the possession of contraband;
> 4. Contact with the public by a contact visit, court appearance that takes place in an area to which the public may have access, *or after transport from or through an area to which the public may have access*; or
> 5. The court has ordered commitment to custody after arraignment, conviction, sentencing, or other court appearance, and the prisoner was not in custody prior to the court appearance.

501 KAR 3:120, Section 3(b) (emphasis added)

While a liberty interest can arise from state law or prison regulations, due process protections are implicated only if the plaintiff establishes that the defendant "impose[d] [an] atypical and significant hardship on [him] in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 483-484 (1995); see also Wilkinson, 545 U.S. at 223 ("The touchstone of the inquiry into the existence of a protected, state-created liberty interest...is not the language of regulations regarding those conditions but the nature of those conditions themselves 'in relation to the ordinary incidents of prison life.'"). Here, the Plaintiff has not argued or established that he was subjected to a situation which constituted an atypical and significant hardship in relation to ordinary prison life when he was strip-searched upon his arrival at the HCDC.

However, even if the Court were to conclude that this regulation did create a liberty interest

in the Plaintiff, the Plaintiff has not established that he was *deprived* of this liberty interest. The regulation provides that a prisoner may only be strip-searched upon a reasonable suspicion that a prisoner has concealed a weapon, drugs, or other contraband. 501 KAR 3:120, Section 3(b). However, the regulation further provides that an official has the needed reasonable suspicion where a prisoner has been transported "from or through an area to which the public may have access." Section 3(b)(4). Presumably, one of the reasons the Plaintiff was strip-searched here was because he had been transported through areas to which the public *may* have had access. Thus, even if this state regulation created a protected liberty interest in the Plaintiff, because the Plaintiff was not deprived of this liberty interest under the regulation - i.e., he was not strip-searched without reasonable suspicion, his procedural due process rights could not have been violated. See, e.g., Brickner v. Volnovich, 977 F.2d 235, 237 (6th Cir. 1992)("The essence of due process is that a *deprivation* of a property or liberty interest must be 'preceded by notice and opportunity for hearing....'"(quoting Mullane v. Central Hanover Bank & Trust Co., 339 U.S. 306, 313 (1950)).

## IV. CONCLUSION

For the foregoing reasons, the Plaintiff's motion for summary judgment on Counts III and IV is **DENIED** and the Defendants' cross-motion for summary judgment on the same counts is **GRANTED**.  **IT IS SO ORDERED**.

cc: Counsel of Record