CIVIL ACTION NO. 4:05-CV-00186-JHM

MITCHELL L. JACKSON                                          PLAINTIFF

V.

RON HERRINGTON, et. al.                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on various motions in limine filed by Plaintiff [DN 90, DN 97, DN 103, DN 104, DN 105, DN 106, DN 107] and Defendants [DN 93, DN 94, DN 95, DN 98]. Also before the Court is a motion by Defendants to strike the Plaintiff's supplemental disclosures [DN 102] and a motion by Plaintiff to Strike a reply [DN 120]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

On November 17, 2005, Plaintiff Mitchell L. Jackson was transferred from the Clark County Jail in Indiana to the Henderson County Detention Center (HCDC) in Kentucky. Upon arrival at the HCDC, Plaintiff was strip searched by Defendant Deputy Jailer Anthony Willett. Plaintiff objected to the search and asked Defendant Willett and Defendant Deputy Jailer Patty McCuiston that he be allowed to speak with their superiors. Defendants refused his request.

Then on November 24, 2005, Plaintiff alleges that Defendant Deputy Jailer Nathan Francis struck him in the mouth with a cell door. Plaintiff alleges that while Defendant Francis was conducting his rounds and counting the inmates that Plaintiff stepped toward the open door of his cell to ask a question. Defendant Francis, not seeing Plaintiff step forward, slid the cell door shut, hitting Plaintiff in the mouth and severely damaging his teeth.

Plaintiff was taken to the infirmary where he was seen by a nurse. Five days later, Plaintiff was seen by the detention center dentist who told him that one of his teeth could not be saved and would need to be replaced. Plaintiff requested that the HCDC replace his teeth. He did this through letters to Defendant Jailer Ron Herrington and Defendant Chief Deputy Jailer Freddie Rowland as well as through various grievance forms.

Defendants Herrington and Rowland investigated Plaintiff's claim and contacted the Clark County Jail. While discussing Plaintiff's alleged injury with Captain Sam Beard, Defendants learned that Plaintiff had made an identical claim that he had been hit in the mouth with a cell door immediately before his transfer from the Clark County Jail. That claim was investigated by Captain Beard who received a note from a confidential informant stating that Plaintiff was injured in a fist fight with another inmate who broke some of his teeth. Based on this note and the circumstances surrounding the incident with the cell door, Captain Beard believed that Plaintiff's injury claim was false. Captain Beard refused to repair Plaintiff's teeth. Thereafter, he was transferred to the HCDC.

Upon learning of the alleged injury in the Clark County Jail and the subsequent investigation into that injury, Defendants also refused to repair or replace Plaintiff's broken teeth. During the remainder of his incarceration at the HCDC, Plaintiff continued to receive pain medication in the form of oragel and ibuprofen but did not receive the replacement tooth that he requested. In December 2005, Plaintiff filed a *pro se* Complaint alleging constitutional violations due to his strip search, the strip search policy of the HCDC, the failure to adhere to the grievance policy of the HCDC, and deliberate indifference to his medical needs. After his release, Plaintiff saw a private dentist who repaired his teeth. Plaintiff then filed an Amended Complaint alleging a negligent personal injury claim in addition to the same constitutional claims. Plaintiff also filed a concurrent

suit against defendants in the Clark County Jail alleging the same negligent injuries.

This Court dismissed Plaintiff's Kentucky suit in three separate orders [DN 34, 53, 54]. The Sixth Circuit Court of Appeals affirmed the dismissal of the constitutional claims but remanded the negligent personal injury claim, Count I. The parties have now submitted their motions in limine in anticipation of the trial on the negligent personal injury claim.

## II. DISCUSSION

The Court will address the motions in limine in the order in which they were filed.

### DN 90 Plaintiff's Motion to Exclude Witnesses and Exhibits not on Defendants' Initial Disclosures

Pursuant to Fed. R. Civ. P. 37(c), Plaintiff has moved to exclude twelve witnesses and seven categories of exhibits that were listed on Defendants' Fed. R. Civ. P. 26(e)(2) pretrial disclosures but were not listed on their initial Fed. R. Civ. P. 26(a) disclosures. Defendants contend that it properly supplemented its initial disclosures through their responses to Plaintiff's interrogatories, requests for production, and requests for admission as well as by disclosing these witnesses and exhibits in their pretrial disclosures. In the alternative, Defendants argue that the failure to disclose these witnesses and exhibits in their initial disclosures was harmless because Plaintiff knew of their existence and received all of the relevant information in the discovery process.

Plaintiff contends that exclusion of the listed witnesses and exhibits for failure to abide by Rule 26 is mandated under Rule 37(c). However, the Court finds that such exclusion is not necessary because the non-disclosure in this case was harmless. "The distinct purpose of the initial disclosure is to alert the opponent to the existence of a witness whose testimony may be helpful to the disclosing party." El Camino Res., LTD v. Huntington Nat'l Bank, 2009 WL 1228680, at *3 (W.D. Mich. April 30, 2009). Contained within Rule 26 is an exemption for any witnesses or

documents that are made known to the opposing party through the discovery process. Fed. R. Civ. P. 26(e)(1)(A). Rule 37(c) excludes those witnesses and exhibits not properly disclosed under Rule 26(a) or (e) unless the failure to disclose was substantially justified or harmless. Fed. R. Civ. P. 37(c)(1).

As the purpose of the initial disclosures is to inform opposing counsel of persons and evidence that may have discoverable information, the Court finds that in this case, the non-disclosure of David Snodgress, Dr. Edward Crutchfield, Terri McGuire, Melissa Price, Barbara Mercer, Sam Beard, and S. Ward by Defendants was not harmful to Plaintiff because Plaintiff had already disclosed them himself. Obviously, Plaintiff was aware that these individuals had discoverable information relevant to the claims and defenses of Plaintiff's suit because Plaintiff himself disclosed them. The Court agrees with the El Camino opinion and finds that "these [initial disclosure] provisions make it clear that a party will not be allowed to insist on exclusion of a witness whose relevance the party was already aware of, especially when that party has itself recognized the witness's importance by including him in the party's own Rule 26(a) disclosure." El Camino, 2009 WL 1228680, at *2.

As for Timothy Cook, Rudolph Yearby, Mike Hammond, Dr. E. Austin Johnson, and Dr. Wilhere, the Court finds that there non-disclosure was also harmless. These five witnesses were all involved with Plaintiff's Indiana lawsuit and his allegations of injury in the Clark County Jail. Mr. Yearby is identified in Plaintiff's final witness list as well as in documents that were produced in discovery. Mr. Cook is likewise identified in documents produced during discovery and used as support for dispositive motions. Mr. Hammond and Mr. Johnson are identified in Plaintiff's own *pro se* Complaint as medical personal who diagnosed his injury in Clark County. As for D. Wilhere,

the Court has learned that he was the doctor at the Clark County Jail and was involved with Plaintiff's care during his incarceration at that facility. Clearly, Plaintiff was aware that these individuals had relevant discoverable information regarding his claims and the relevant defenses. In his *pro se* Complaint, Plaintiff admitted to suffering and identical injury only weeks before his alleged injury at the HCDC, therefore, the Court finds that he was aware that a pre-existing injury defense was likely and that those individuals at Clark County involved with his admitted injury there would have discoverable information.

The purpose of Rule 26 is to ensure that opposing counsel know of witnesses and evidence with relevant discoverable information. In the instant case, that purpose was unaffected by the non-disclosure of these witnesses. The Court finds that the non-disclosure of these twelve witnesses was harmless because Plaintiff was aware of their existence and the fact that they had relevant discoverable information. Therefore, their non-disclosure does not require exclusion under Rule 37(c).

Plaintiff also seeks to exclude several exhibits that Defendants have listed in their pretrial disclosures but did not list on their initial disclosures. The Court will address each cited exhibit in turn.

2.a.7.: X-Ray of Mitchell Jackson's mouth. Defendants contend that the X-ray listed on their pretrial disclosure was provided to them by Plaintiff in his supplemental disclosure on November 15, 2007. The court finds that this non-disclosure was harmless as Plaintiff knew of the document's existence and provided a copy to Defendants.

In their motion on this matter, Defendants denied knowledge of the existence of any X-ray other than the one provided by Plaintiff. However, during a hearing on this matter, held on May 3,

2011, a second X-ray was produced by Defendants. This X-ray was found within a file in the possession of Defendants that had not previously been disclosed to Plaintiff. Defendants' counsel contends that the existence of this file and this X-ray was unknown to him until the day of the hearing when it was discovered. Regarding this second X-ray, the Court finds that Defendants failure to disclose it was not substantially justified or harmless, therefore, Defendants are precluded from using this X-ray at trial. However, that order of preclusion shall not apply to Plaintiff, as he is entitled to the use of the second X-ray.

2.c.: The contract regarding housing of inmates by the HCDC for the Clark County Indiana Detention Center. Defendants contend that this contract was only recently discovered but that it was provided to Plaintiff during a document exchange on March 11, 2011. However, this does not demonstrate that the failure to discover and disclose this document earlier was justified. Defendants also claim that they do not anticipate using this document in their case-in-chief, rather, they will use it only for impeachment purposes. Defendants contend that because the use of this document would be solely for impeachment that it was not subject to disclosure pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii). As Defendants will only use this evidence for impeachment, the Court finds that its disclosure was not required by Rule 26 and that its exclusion is not mandated by Rule 37. However, Defendants are hereinafter precluded from any use of this document other than for impeachment.

2.d.: Plaintiff Jackson's Inmate file with the Clark County Jail. Defendants contend that the relevance of this document only recently became known because Defendants only recently learned of Plaintiffs' identical Indiana lawsuit. Defendants contend that the non-disclosure of the file is, therefore, justified. Notwithstanding that claim, Defendants contend that they do not have

a copy of the entire file.  It appears to the Court that some documents from this file have been provided to Plaintiff through the discovery process.  To the extent that documents from this file have been provided to Plaintiff, the Court finds that the non-disclosure of those documents was harmless because Plaintiff was aware of their existence.

As for any documents not provided in the discovery process, Defendants must establish either substantial justification for their non-disclosure or the harmlessness of such non-disclosure. The Court finds that Defendants have not met their burden of establishing substantial justification as required by Rule 37(c).  The Defendants do not indicate when they learned of the lawsuit and why they did not file supplemental disclosures.  The Court finds that such a claim, without more support, fails to demonstrate substantial justification for non-disclosure.  The file could also avoid exclusion if its non-disclosure was harmless, but "[t]he burden is on the potentially sanctioned party to prove harmlessness."  R.C. Olmstead, Inc. v. CU interface, LLC, 606 F.ed 262, 272 (6th Cir. 2010). Defendants have not satisfied that burden either.  While it is true that Plaintiff does know of the file's existence, he does not know the content of the file.  In fact, Defendants admit that they do not even have the entire file, so its content is likely also unknown to Defendants.  Having failed to show substantial justification or the harmlessness of the non-disclosure, the Court finds that the file must be excluded under Rule 37(c).  To the extent that Defendants seek to offer documents that were earlier disclosed or provided during discovery that may have originally been part of the Clark County file this order does not apply.

2.e.: Records of Plaintiff's felony convictions.  Defendants contend that these will only be used for impeachment and are not subject to disclosure under Fed. R. Civ. P. 26(a)(1)(A)(ii).  The Court agrees and finds that the records are not subject to exclusion under Rule 37.

2.f.: Court file titled <u>Jackson v. Belcher</u>.  Defendants contend that the non-disclosure of this file which contains documents filed in Plaintiff's identical Indiana lawsuit is justified because they only recently learned of the lawsuit's existence.  Defendants further argue that the non-disclosure was harmless because Plaintiff was aware of the documents filed in his own lawsuit.  The Court agrees that the non-disclosure was harmless and the documents are not subject to exclusion under Rule 37.

2.g.: Clark County Sheriff Jail Log and 2.h: Confidential Informant Statement.  Defendants contend that these were provided to Plaintiff as exhibits to discovery responses and that they were provided as part of Defendants' certification of documents filed on February 9, 2007, [DN 19].  Assuming this is true, the Court finds that Plaintiff has been aware of the existence and content of these documents for over four years and that their non-disclosure was harmless.  Therefore, they are not subject to exclusion under Rule 37.

The Court **GRANTS IN PART** Plaintiff's motion to exclude those documents in Defendants' exhibit 2.d., Plaintiff's Clark County Jail file, not previously disclosed in discovery and **DENIES IN PART** the remaining issues.

**DN 93 Defendants' Motion to Exclude Plaintiff's Witness Designations**

Defendants move to exclude all witnesses that Plaintiff has designated for trial on the ground that they were not timely filed with the Court.  The scheduling order set a deadline for the filing of witness designations no later than February 28, 2011.  Defendants received Plaintiff's witness designations via mail on March 3, 2011.  Plaintiff contends that he was confused by an order granting an extension of time for filing documents and thought that the designations only needed to be served upon Defendants by February 28, 2011, which he accomplished by timely mailing the

designations. There is no evidence that Defendants were unaware of any of the witnesses designated by Plaintiff. The Court finds that the reception of the disclosures by Defendants three days late is harmless, and that exclusion of all of Plaintiff's witnesses is not appropriate. Therefore, the Court **DENIES** Defendants' motion.

In his response, Plaintiff filed a cross motion for sanctions under Rule 37. Raising such a motion in a response was not appropriate given the order of the Court that no replies would be permitted. Plaintiff did file a motion for additional sanctions [DN 124], to which a response by Defendants is due May 5, 2011. The Court will address Plaintiff's arguments for sanctions raised in his response [DN 122] in a separate opinion along with Plaintiff's actual motion requesting sanctions [DN 124].

**DN 94 Defendants' Motion to Exclude Plaintiff's Witnesses**

Defendants have filed a motion to exclude certain witnesses of Plaintiff on the grounds that their testimony would be irrelevant and prejudicial. Plaintiff has identified as witnesses the plaintiff and persons named in the case <u>Marshall v. Henderson Co.</u>, and the plaintiff in the case <u>Arflack v. Henderson County, et al.</u> Plaintiff has indicated that these witnesses' testimony is relevant to Plaintiff Jackson's claim that he was denied medical and dental treatment while at the HCDC. Plaintiff contends that their testimony will have more of a tendency to convince the jurors that these defendants deny care to HCDC inmates.

The Court finds that these potential witnesses' testimony, as indicated by Plaintiff, is irrelevant and, therefore, not admissible. The claim that is proceeding to trial is one alleging that Defendants negligently caused injury to Plaintiff by hitting him in the mouth with a cell door. Plaintiff's deliberate indifference to medical and dental needs claim has already been dismissed and

the Court has rejected Plaintiff's claim that he has a viable negligent refusal to treat claim. Testimony about Defendants failure to attend to medical needs in the past is not relevant to the issue of whether Defendants negligently hit Plaintiff in the mouth with a cell door. Therefore, the Court **GRANTS** Defendants' motion and finds that Plaintiff's witnesses Marshall and Arflack should be excluded from trial under F.R.E. 402 because their testimony regarding Defendants prior failure to provide medical care is irrelevant.

**DN 95 Defendants' Motion to Limit Plaintiff's Damages and DN 102 Defendants' Motion to Strike Plaintiff's Supplemental Disclosure**

Defendants have filed a motion to prevent Plaintiff from requesting damages in excess of $1,765.00 at trial. Defendants contend that Plaintiff's supplemental disclosure on November 15, 2007, listed only dental bills as damages in the amount of $1,765.00. The dental bills submitted in connection with that supplemental disclosure show that a treatment plan was discussed with Plaintiff on May 24, 2006, that included three different proposed actions with three different subtotals. It appears to the Court that the treatment plan was a proposed estimate for Plaintiff's dental work. The plan contained an oral evaluation fee of $65.00 and then, what appears to the Court to be, two different options for fixing Plaintiff's teeth 7, 8, and 9. The first option called for two porcelain crowns and a porcelain bridge covering teeth 7, 8, and 9, which would cost $1,700.00. The second option called for two gold crowns and a gold bridge covering teeth 7, 8, and 9, which would cost $2,618.00.

It appears that on May 31, 2006, Plaintiff chose the option with the porcelain crowns and bridge and had that work completed resulting in a bill of $1,765.00. It further appears that this bill was paid in two cash payments of $500.00 and $1,265.00. As the Court reads the billing documents, Plaintiff was given two treatment options for the same procedure involving two different types of

materials. Plaintiff appears to have chosen the porcelain option and incurred actual damages in the amount of $1,765.00. However, the Court may have interpreted these documents wrong and the $2,618.00 amount could be an estimate for work that has yet to be performed, but is still required as a result of Plaintiff's alleged injury. Therefore, the Court will reserve this issue for trial, in order to better make a determination as to the purpose of each estimated total listed in Plaintiff's supplemental disclosures.

It is unclear, but it also appears that Defendants' motion seeks to preclude Plaintiff from claiming any category of damages other than the actual damages disclosed in his supplemental disclosures dated November 15, 2007. In response to Defendants' motion, Plaintiff served Defendants with another supplemental disclosure on March 9, 2011, that focuses solely on damages claimed and the computation of those damages. In this disclosure, Plaintiff seeks damages for actual dental bills, pain and suffering, and punitive damages. Plaintiff discloses the computation of the various damages as follows: (1) Actual damages in the amount of $4,383.00; (2) "pain and suffering in an amount of $131,490.00" (calculated as 30 times the actual damages incurred); and (3) "punitive damages in an amount of $192,235.00 [sic]" (calculated as 1.5 times the amount of pain and suffering).[1]

Defendants then moved to strike Plaintiff's March 9, 2011, supplemental disclosure [DN 102]. Defendants contend that this computation of damages comes more than three years after Plaintiff's last disclosure of damages, which indicated that only actual damages would be sought.

---

[1] The Court notes that Plaintiff's disclosure seeks only $192,235.00 for punitive damages. The Court believes that Plaintiff's counsel made a simple arithmetical mistake, and the proper result for $131,490.00 multiplied by 1.5 is $197,235.00. The Court believes that $197,235.00 is the amount Plaintiff intends to seek for punitive damages.

Defendants further contend that the discovery process has now closed and that Plaintiff should not be able to claim additional damages. The Court finds that Plaintiff's failure to disclose these damages earlier was harmless. Defendants had ample opportunity to investigate the actual damages disclosed by Plaintiff in 2007. It is no surprise that the Plaintiff would be seeking damages for pain and suffering. Whether the Court will instruct on punitive damages will be determined at trial. Defendants' inability to conduct discovery into the amount of those damages is harmless. Therefore, the Court **DENIES IN PART** Defendants motion to exclude evidence of pain and suffering and **RESERVES FOR TRIAL** the amount of Plaintiff's actual damages and the question of whether a punitive damage instruction is warranted by the evidence. The Court further **DENIES** Defendants' motion to strike Plaintiff's supplemental disclosures dated March 9, 2011.

**DN 97 Plaintiff's Motion to Exclude HCDC Documents**

Plaintiff has filed a motion to exclude Defendants' use of HCDC documents on the grounds that Plaintiff's counsel has yet to see the originals of these documents. During the discovery process, Plaintiff was provided copies of documents in the possession of HCDC. Plaintiff's counsel requested to see the originals through various avenues including informal email exchanges, motions, and a Rule 34 request for inspection filed after the close of discovery. Plaintiff's counsel and Defendants' counsel arranged for a meeting in Henderson where the HCDC file would be available for Plaintiff to view. However, at this meeting Plaintiff was not able to view the originals but instead saw only copies. Plaintiff has now requested that these documents be excluded from trial on account of his inability to see the originals.

The Court ordered Defendants to produce the entire file for Plaintiff's inspection prior to a hearing on May 3, 2011. At that hearing, Plaintiff advised the Court that he had seen part of the

original file immediately before the hearing and that he had discovered at least thirty (30) documents contained in the file that had not previously been disclosed, including an X-ray taken of Plaintiff's injury by the jail dentist on November 29, 2005. Therefore, Defendants are precluded from using at trial any document discovered in the original files that was not previously disclosed to Plaintiff during discovery. However, no such exclusion shall apply to any use of the non-disclosed documents by Plaintiff. Accordingly, the Court **GRANTS IN PART** Plaintiff's motion to exclude from Defendants' use those HCDC documents not previously disclosed in discovery, and **DENIES IN PART** Plaintiff's motion to exclude the HCDC documents which he received during discovery.

**DN 98 Defendants' Motion to Exclude Evidence of Plaintiff's Dismissed Constitutional Claims**

Defendants have moved to exclude all evidence of Plaintiff's claims regarding the grievance policy/procedure at HCDC, the strip search policy at the HCDC, the strip search that was conducted on Plaintiff at the HCDC, and any alleged deliberate indifference to Plaintiff's medical needs. Defendants argue that these claims have already been adjudicated in favor of Defendants and that they should not be put before the jury. Plaintiff contends that this motion is overly broad and vague, and that it would exclude relevant evidence regarding the injury suffered by Plaintiff while at the HCDC.

In his response, Plaintiff focuses on the inclusion of evidence associated with the HCDC grievance policy/procedures. Plaintiff contends that there is evidence of Plaintiff's negligent injury claim contained in various grievance forms and that the exclusion of those forms would be improper. To the extent that the grievance forms may contain information relevant to Plaintiff's alleged negligent injury claim, being hit in the mouth with a cell door, the Court finds that such evidence should not be excluded based on Defendants' motion. These forms could very well contain relevant

admissible evidence and their exclusion at this stage is not appropriate. Any irrelevant or prejudicial material contained within these forms can be dealt with at trial. Similarly, some of the forms that might have supported Plaintiff's deliberate indifference to medical and dental needs claim may also have relevance to Plaintiff's alleged pain and suffering damages. To that extent, the evidence is admissible, however, the Court may be required to address the admissibility of such evidence on piece-meal basis at trial.

The Court finds that evidence of an alleged unconstitutional strip search policy at the HCDC and evidence of the actual strip search of Plaintiff at the HCDC is not relevant to Plaintiff's remaining negligent injury claim. Any testimony, documentary evidence, exhibit, or argument regarding the existence or advancement of those claims should be excluded from the upcoming trial. Such evidence is not relevant to Plaintiff's negligent injury claim under F.R.E. 401, therefore, it should be excluded pursuant to F.R.E. 402.

The Court **GRANTS IN PART** Defendants' motion to exclude all evidence and argument regarding the HCDC strip search policy and the actual strip search of Plaintiff, and **DENIES IN PART AND RESERVES FOR TRIAL** Defendants' motion to exclude the grievance forms and evidence of Defendants' actions in treating that injury which relate to pain and suffering damages.

**DN 103 Plaintiff's Motion to Exclude Progress Notes**

Plaintiff has filed a motion to exclude a nurse's Progress Note dated December 14, 2005. Plaintiff contends that most of the statements contained in this document are hearsay and should be excluded under F.R.E. 802. Plaintiff's main contention concerning this document is that it recites the contents of a conversation with Captain Sam Beard, which was a discussion of the alleged injury suffered by Plaintiff at the Clark County Jail. The Defendant has listed both the nurse and

Captain Beard as witnesses. Assuming both testify and recall their discussion and the events, this objection, as well as the Progress Note, has little significance. Furthermore, before this note is offered through Nurse Souders, the Plaintiff will have testified. The Defendant through cross-examination will have already established that Plaintiff filed a suit against Clark County for a similar injury. It will also be established, at the very least by Plaintiff's pro se complaint, that he knew Clark County believed that Plaintiff's teeth were loosened in a physical altercation with another inmate. In any event, the Court believes it is easiest to split the document into separate statements and address the admissibility of each statement in turn. The statements are as follows: (1) "Spoke [with] Captain Beard regarding the situation [with inmate concerning] tooth." (2) "It was divulged to this nurse that as a result of a previous altercation [with] this inmate the tooth had been loose prior to his transfer to the Henderson County Det[ention Center]." (3) "This nurse also spoke [with] the [inmate] regarding this discussion [with] Sam Beard [at] Clark County." (4) "The inmate began stuttering stated "yeah but it wasn't like this." (5) "The inmate had been provided soft diet for any discomfort while eating[,] pain [management], and saw the dentist." (6) "Capt. Beard also informed this nurse the inmate had attempted to file lawsuit against Clark County based on an issue regarding a tooth and another injury allegedly sustained during his stay [at] Clark County[.]"

The Court believes that statements 1, 3, and 5, as contained within this document, are hearsay but are admissible under F.R.E. 803(6). Statement 4 is an admission by a party opponent and is not subject to the hearsay rule under F.R.E. 801(d)(2). Defendants seek to establish the truth of statement 4, that Plaintiff admitted to injuring his tooth prior to arriving at the HCDC. In order to establish the truth of this statement, the jury must first hear statement 2 because Plaintiff's admission is in the form of a response to earlier discussed material. In this context, statement 2 is not hearsay

because it is not being offered for the truth of the matter asserted. The significance of statement 2 is not that the statement is true, but that when confronted with statement 2, Plaintiff did not deny it.

Plaintiff contends that the argument that statement 2 is not being offered for the truth of the matter asserted is not a credible one. In support of this contention, Plaintiff cites <u>Field v. Trigg County Hosp. Inc.</u>, 386 F.3d 729 (6th Cir. 2004). In <u>Field</u>, the defendant doctor contacted other doctors in an attempt to ensure he was properly treating his patient's rare snake bite wound. At the defendant's trial for malpractice he sought to introduce the content of those phone calls. The <u>Field</u> defendant argued that the content of the calls was not being offered for the truth of the matter asserted, that he was properly treating her, but was instead being offered to show that he followed the appropriate standard of care by contacting more experienced doctors. The trial court found the testimony was not hearsay but the Sixth Circuit Court of Appeals disagreed. The Sixth Circuit found that the defendant could have established the fact that he followed the appropriate standard of care by simply introducing evidence that he did contact more experienced doctors. The court found that "[t]he statements were hearsay because they went well beyond conveying that [defendant] sought out a consultation to the entirely self-serving purpose of exposing the jury to the approving words of two purported experts from a purportedly esteemed medical institution." <u>Field</u>, 386 F.3d at 735.

The <u>Field</u> decision is distinguishable from the present facts. Unlike the situation in <u>Field</u>, where defendant could have established that he called without the use of the hearsay statement, the present Defendants can not establish that Plaintiff admitted to being injured in an altercation without first establishing that Plaintiff was questioned about the altercation. Plaintiff's admission, to be understood as an admission, requires that the fact finder know the question to which Plaintiff was responding. This situation is distinguishable from <u>Field</u> and the Court finds that the holding of <u>Field</u>

does not require exclusion of statement 2.

That leaves only statement 6. The Court finds that this statement is hearsay and does not fall within an exception. The statement that Captain Beard told the declarant that Plaintiff filed a lawsuit in Indiana for the same injuries appears to serve no purpose other than establishing the truth of the matter asserted, that Plaintiff really did file a lawsuit for the same injuries. As such, statement 6 qualifies as hearsay under F.R.E. 801(c) and should be excluded. But again, Defendant will be able to prove these facts without resort to the Progress Note.

The Court finds that the statements contained in the note are admissible except for statement 6 discussing Plaintiff's Indiana lawsuit.

**DN 104 Plaintiff's Motion to Exclude Pleadings from Indiana Law Suit**

Plaintiff contends that pleadings and attachments from a civil suit that he filed against defendants in Clark County, Indiana should be excluded because (1) they were never disclosed pursuant to Fed. R. Civ. P. 26; (2) they are irrelevant under F.R.E. 401, 402; (3) their prejudicial problems substantially outweigh their probative value; and (4) everyone agrees that Plaintiff had a tooth injury, and the real issue is whether Defendants failed to treat that issue. The Court will address each argument in turn.

As discussed above, the Court finds that Defendants' failure to disclose these documents was harmless. These documents were all filed in a civil action to which Plaintiff was a party. While Plaintiff may have hoped that Defendants would not learn of the Indiana case, he cannot say that he was unaware of the documents' existence or their content. Therefore, the Court finds that exclusion of the documents under Fed. R. Civ. P. 37(c) is inappropriate because the non-disclosure was harmless.

The Court finds that these documents are also relevant and, therefore, not excludable under F.R.E. 402. Relevant evidence means "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. The fact that is of consequence is whether Plaintiff's alleged injury occurred prior to his transfer to the HCDC. The pleadings and attachments to a civil case where Plaintiff has alleged an identical injury that would have occurred prior to his transfer to HCDC are clearly relevant.

Moreover, the probative value of this evidence is not substantially outweighed by its potential prejudice to Plaintiff. To the extent that the jury will confuse the issues of the present case and the Indiana case, if the Court considers it appropriate, a limiting instruction can cure any confusion. Furthermore, the Court does not believe that introduction of the evidence will lead to undue delay. As for Plaintiff's citation to <u>Illinois C.R. Co. v. Jolly</u>, 84 S.W. 330 (Ky. 1905), the Court finds that decision and the logic underpinning it distinguishable from the present case. In <u>Jolly</u>, the Kentucky Court of Appeals found that counsel's statement that his client had already won a judgment that was reversed on a technicality was prejudicial. Those facts do not resemble the facts of the instant case. Defendants do not intend to submit the pleadings and attachments of the Indiana case to prove that the same claim has already failed and been dismissed. Such a use would certainly be prejudicial and inappropriate. However, the use of the documents to show that Plaintiff filed suit to recover for identical injuries that he allegedly suffered in Indiana prior to his transfer is probative of whether Defendants actually caused his injuries. Therefore, the Court finds that the probative value of that evidence is not substantially outweighed by the potential prejudice to Plaintiff.

Plaintiff's final argument is essentially another relevance argument. Plaintiff contends that

the pleadings demonstrating when the injury might have occurred are irrelevant because the real issue is whether the Defendants refused to treat his injury. The Court has already rejected Plaintiff's argument that he has a viable negligent refusal to treat claim and as discussed above, the Indiana pleadings are relevant to Defendants' defense of Plaintiff's injury claim and are admissible. Therefore, the Court **DENIES** Plaintiff's motion to exclude the pleadings and attachments from his previously filed Indiana lawsuit.

**DN 105 Plaintiff's Motion to Bar Defendants from Using the Fight Defense**

Plaintiff has filed a motion to preclude Defendants from using the "fight" defense at trial. Plaintiff contends that all of the documents discussing the fight defense are inadmissible hearsay because they are all based on a note written by an anonymous Confidential Informant. Plaintiff is specifically seeking to exclude the Clark County Incident Report numbered 05-165, the Clark County Sheriff jail management log dated 10/23/05-11/05/05, the informant information regarding the alleged fight, the note written by the anonymous Confidential Informant disclosing the fight, as well as the testimony of Captain Sam Beard and the unnamed Confidential Informant. Plaintiff contends that once this evidence is properly excluded that he is entitled to a Fed. R. Civ. P. 56(c) order granting him summary judgment on Defendants' "fight" defense, which would preclude Defendants from arguing such a defense at trial. In his trial brief, Plaintiff also seeks to preclude Defendants from using the pre-existing injury theory as a defense. The Court will address that issue along with Plaintiff's motion for summary judgment on the "fight" defense.

The Court will address each piece of evidence in turn beginning with Defendants' proposed exhibit 2.h, the note from the unnamed Confidential Informant. Defendants intend to offer into evidence a note from an unnamed Confidential Informant that states that inmate Yearby is beating

up white guys and also hit Plaintiff Jackson in the mouth and broke his teeth. Plaintiff contends that this note is hearsay without an exception and should be excluded. The Court agrees. The note is classic hearsay, an out of court statement offered to prove the truth of the matter asserted, that Plaintiff suffered his injuries in a fight with another inmate.

Defendants have not identified an exception into which this note falls, and the Court does not believe there is such an exception. However, Defendants do argue that the note is not hearsay because it is not being offered for the truth of the matter asserted, but is instead being offered as context for Plaintiff's later discussion of the fight. The Court does not believe that such context must be provided by the note, and that even when offered as context, that the note's prejudice substantially outweighs its probative value. Defendants can establish the context for Plaintiff's later admission through less prejudicial means. Accordingly, the Confidential Informant's note describing the fight should be excluded.

Plaintiff next contends that the Clark County Incident Report numbered 05-165, Defendants' exhibit 2.d.5., should be excluded because it relies on the inadmissible Confidential Informant's note. The Court believes that a majority of the information contained within the Incident Report is likely admissible under F.R.E. 803(8). Rule 803(8) excepts from the hearsay rule

> Records, reports, statements, or data compilations, in any form, of public offices or agencies, setting forth (A) the activities of the office or agency, or (B) matters observed pursuant to duty imposed by law as to which matters there was a duty to report, excluding, however, in criminal cases matters observed by police officers and other law enforcement personnel, or (C) in civil actions and proceedings and against the Government in criminal cases, factual findings resulting from an investigation made pursuant to authority granted by law, unless the sources of information or other circumstances indicate lack of trustworthiness.

Fed. R. Evid. 803. Under Rule 803(8), an incident report of an accident in a jail could qualify as a matter observed pursuant to duty imposed by law or as factual findings resulting from an

investigation.

However, Rule 803(8) specifically excludes information that lacks trustworthiness. In <u>Miller v. Caterpillar Tractor Co.</u>, the Sixth Circuit affirmed the trial court's exclusion of a police report under F.R.E. 803(8)(C) for its lack of trustworthiness. 697 F.2d 141, 144 (6th Cir. 1983). The Sixth Circuit held that "since the document relied upon hearsay statements of the witnesses interviewed by the investigator" that the report's exclusion based on its lack of trustworthiness was not an abuse of discretion. <u>Id.</u> However, the existence of an inadmissible statement in a report does not require the full exclusion of the report. In <u>Beech Aircraft Corp v. Rainey</u>, the Supreme Court found that "a trial judge has the discretion, and indeed the obligation, to exclude an entire report or portions thereof-whether narrow 'factual' statements or broader 'conclusions'-that she determines to be untrustworthy." 488 U.S. 153, 167 (1988).

Looking to the Incident Report at issue, the Court finds that the majority of the report is likely admissible under Rule 803(8)(B) or (C). The first three paragraphs of the report contain the factual record of an incident involving Plaintiff and his claim to have been hit by a cell door in the Clark County Jail. These paragraphs are authored by the officer who allegedly hit Plaintiff with the cell door, Officer Tim Cook. This report, therefore, likely falls within Rule 803(8)(B) as a report of matters observed by Officer Cook pursuant to his duty imposed by law, to report such things, or alternatively within Rule 803(8)(C) as factual findings resulting from an investigation made pursuant to authority granted by law. As this information is based on Officer Cook's own observations of the incident, the Court finds that it is sufficiently trustworthy and that its reliability is not called into question, therefore, it is likely admissible under Rule 803(8).

However, the fourth paragraph lacks this same trustworthiness. The fourth paragraph

denotes that Officer Cook was advised by Captain Beard that a Confidential Informant had written a letter telling Captain Beard that Plaintiff's mouth was injured in a fist fight prior to his claim of being hit by the cell door. This statement is hearsay and does not carry with it the same level of trustworthiness as the statements which were reported by Officer Cook from his own personal knowledge. Therefore, the Court finds that paragraph four in the Incident Report is likely not admissible under Rule 803(8) and absent another proffered exception, should be excluded. The Court notes that the report also has a supplement attached to it that contains Officer S. Ward's observation of the incident. The Court finds that this supplement is likely admissible for the same reasons discussed above regarding the first three paragraphs of Officer Cook's report.

Due to the likelihood that the majority of the report falls into Rule 803(8)'s exception, the Court finds that Plaintiff has not carried his burden and demonstrated that the entire report is clearly inadmissible. However, the Court finds that the Plaintiff has demonstrated that the fourth paragraph of the report is clearly inadmissible. Therefore, the Court will exclude paragraph four from introduction at trial. All remaining admissibility issues regarding this report are reserved for trial.

Plaintiff contends that certain handwritten material should also be excluded from the HCDC incident report, Defendants' exhibit 2.a.5. Plaintiff contends that the actual incident report is admissible but that the handwritten note on the bottom of the report should be excluded. Defendants submit no response on this issue. The Court agrees with Plaintiff. The HCDC incident report, just like the Clark County incident report, is likely admissible under F.R.E. 803(8). However, the handwritten note, which is dated almost two weeks after the report was filed, lacks the indicia of trustworthiness that the remainder of the typed report contains. The handwritten note does not discuss the incident in question but instead discusses a conversation with Captain Beard of the Clark

County Sheriff's Office. The circumstances of this handwritten addition indicate a lack of trustworthiness and the Court finds that it should be excluded. If the report is to be introduced at trial, it should be done so with the handwritten portion redacted.

Plaintiff has also requested that the Clark County Sheriff's log, Defendants' exhibit 2.g., and the Informant information regarding the fight between Plaintiff and inmate Yearby, exhibit 2.d.7., be excluded as well. However, the Court does not have these exhibits and Plaintiff's argument for their exclusion appears to be that they are related to the fight between himself and inmate Yearby and should, therefore, be excluded. The Court finds that the Plaintiff has not carried his burden to demonstrate that the evidence is clearly inadmissible. Therefore, the Court will reserve the admissibility of these exhibits for trial.

Plaintiff has argued that Defendants' witness 1.m., Captain Sam Beard, should be excluded because his testimony would likely include inadmissible hearsay regarding the Confidential Informant's note. The Court recognizes that Captain Beard's testimony may include discussions of the Confidential Informant's note which may not be admissible, however, that does not mean that Captain Beard will have no admissible testimony whatsoever. Therefore, the Court reserves any challenge to Captain Beard's testimony for trial.

Plaintiff has also argued that Defendants' witness 1.y., the Confidential Jail Informant, should be excluded. At the pre-trial conference, Defendant stated it did not intend to call the confidential informant, thus, the objection is moot.

Plaintiff's final argument in this motion is that it should be granted summary judgment precluding Defendants use of the "fight" defense at trial. Before the Court may grant a motion for summary judgment, it must find that there is no genuine dispute as to any material fact and the

moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of specifying the basis for its motion and of identifying that portion of the record which demonstrates the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party satisfies this burden, the non-moving party thereafter must produce specific facts demonstrating a genuine issue of fact for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).

The Court finds that there is a genuine dispute of material fact regarding the admissibility of evidence concerning the "fight" defense. Plaintiff contends that there is no admissible evidence that he was involved with a fight prior to his transfer to the HCDC. Furthermore, Plaintiff has filed his own affidavit and the affidavit of inmate Yearby, who was alleged to have hit him, both of which state that no fight occurred. Plaintiff also claims that the absence of any official record of the fight in the Clark County Jail files demonstrates that the fight never occurred. Plaintiff argues that all of this evidence points to the absence of a genuine dispute of material fact regarding whether a fight occurred and that such a defense should not be permitted to be raised at trial.

However, the Court has already found that Defendants' exhibit 2.a.4., Progress Notes dated December 14, 2005, is likely admissible. In this document, Nurse Sauders confronts Plaintiff with the allegation that his injury was caused by a prior altercation at the Clark County Jail. Plaintiff's response could be inferred as an admission that he was indeed involved in such an altercation. Furthermore, Nurse Sauders is a listed witness who is expected to testify to that conversation and Plaintiff's admission. Such testimony would be admissible. The Court finds that the presence of such evidence regarding Plaintiff's admission is enough to create a genuine dispute of material fact regarding whether a fight occurred. Therefore, summary judgment in favor of Plaintiff precluding

24

Defendants' from using the "fight" defense is not appropriate and the Plaintiff's motion on this issue is denied.

In his trial brief, Plaintiff contends that Defendants should be precluded from using the pre-existing injury theory. Plaintiff argues that Defendants should not be allowed to put forth the theory that Plaintiff's injury was pre-existing because such a theory requires medical expert testimony and the Defendants do not have a medical expert. Plaintiff cites <u>Frasure Creek Mining v. Cornett</u>, 2010 WL 109519 (Ky. Ct. App. 2010), for the proposition that "when a defendant 'raises preexisting [injury] as a defense, . . . any such finding must be based on the opinion of a medical expert.'" Pl's. Trial Brief 11.

A proper reading of the <u>Frasure</u> decision does not support Plaintiff's position. The <u>Frasure</u> decision involves the review of a Worker's Compensation Board's decision regarding the use of the active impairment defense by an employer. When one reads the entire passage from which Plaintiff's quotation is drawn, it is clear that the case does not support the Plaintiff's proposition.

> [A]n exclusion from a partial disability award for an alleged condition that is preexisting and active must likewise be based upon a pre-existing impairment rating under the AMA *Guides*.
>
>> In view of that, where an employer **raises preexisting** active impairment **as a defense**, the ALJ must determine whether the injured worker qualified for an impairment rating involving the same body part immediately prior to the work-related injury for which benefits are being sought. What is more, **any such finding must be based on the opinion of a medical expert** in accordance with the AMA *Guides*.

<u>Id.</u> at *3 (emphasis added to depict the pieces selectively quoted by Plaintiff's counsel). <u>Frasure</u> is clearly distinguishable from the proposition Plaintiff advances. <u>Frasure</u> deals with an entirely different area of law, Worker's Compensation, and as such, it relies on the requirements found in the AMA *Guides* regarding active impairment. Therefore, the Court finds that <u>Frasure</u> is of no

consequence to the instant case.

A plaintiff in a negligence action bears the burden of establishing causation. "In contrast, defendants are not required to 'disprove' causation. Instead, they must only produce 'credible evidence which tends to discredit or rebut the plaintiff's evidence' so as to 'convince the trier of fact that the alleged negligence was not the legal cause of the injury.'" Hudson v. CSX Transp., Inc., 2009 WL 4406069, at *4 n.3 (Ky. Ct. App. 2009) (quoting Sakler v. Anesthesiology Assocs., 50 S.W.3d 210, 214 (Ky. Ct. App. 2001)). Although Defendant would be required to provide a medical expert if it had the burden of establishing the cause of the injury, no such burden exists here. Defendant can not be prevented from cross-examining Plaintiff regarding other possible causes of Plaintiff's injury. See Sakler, 50 S.W.3d at 214. This is especially true in light of the fact that Plaintiff has already admitted to receiving an injury in Clark County in his own *pro se* Complaint.

Accordingly, the Court **GRANTS IN PART** Plaintiff's motion to exclude Defendants' exhibit 2.h. the Confidential Informant's note; the fourth paragraph of Defendants' exhibit 2.d.5., the Clark County Incident Report numbered 05-165 that discusses the Confidential Informant's note; and the handwritten portion of Defendants' exhibit 2.a.5., the HCDC Incident Report. Furthermore, the Court **DENIES** Plaintiff's motion for summary judgment on the "fight" defense and the pre-existing injury defense, and **RESERVES FOR TRIAL** the admissibility of the remainder of Defendants' exhibit 2.d.5. the Clark County Incident Report number 05-165; Defendants' exhibit 2.g., the Clark County Jail log; Defendants' exhibit 2.d.7., the Informant's Information; the testimony of Defendants' witness 1.m. Captain Sam Beard.

**DN 106 Plaintiff's Motion to Bar Defendants' Inadmissible Testimony and Exhibits**

Plaintiff has filed a motion seeking to exclude thirteen (13) witnesses and thirteen (13)

exhibits identified in Defendants' pretrial disclosures.  The Court will address each witness and exhibit in turn.[2]

1.l.: Mike Hammond.  Plaintiff contends that Hammond should be excluded because (1) he was not on Defendants' initial disclosures; (2) he has no relevant testimony under F.R.E. 402; (3) he lacks personal knowledge under F.R.E. 602; (4) his testimony is likely to contain hearsay excludable under F.R.E. 802; and (5) any relevance to his testimony is substantially outweighed by the likelihood of prejudice under F.R.E. 403.

The Court finds that Plaintiff knew of Hammond's existence as he was disclosed in Plaintiff's initial pro se complaint.  Therefore, Hammond's non-disclosure through initial disclosures was harmless.  Hammond was the nurse at the Clark County Jail who treated Plaintiff when he claimed to have been struck by a door at that facility.  As such, his testimony is relevant to the defense that Plaintiff was injured prior to arriving at the HCDC.  He has personal knowledge to testify regarding that issue.  Any potential hearsay he may testify to is better left to be dealt with at trial rather than by full exclusion pretrial.  Plaintiff has failed to show that potential prejudice substantially outweighs Hammond's relevant testimony.

1.m.: Captain Sam Beard.  Plaintiff identifies the exact same arguments for exclusion of Beard as he does for exclusion of Hammond.  The Court finds that Plaintiff knew of Beard's existence as he was disclosed in Plaintiff's initial pro se complaint and his own supplemental disclosures, therefore, Beard's earlier non-disclosure was harmless.  Beard was an officer at the

---

[2] The Court directs the readers attention to the earlier discussion of DN 90 where the Court found that Defendants' failure to initially disclose twelve (12) witnesses and six (6) exhibits did not require exclusion under Fed. R. Civ. P. 37 because the non-disclosure was harmless.

Clark County Jail when Plaintiff was allegedly struck by a door at that facility. As such, his testimony is relevant to the defense that Plaintiff was injured prior to arriving at the HCDC. He has personal knowledge to testify regarding that issue. Any potential hearsay he may testify to is better left for trial rather than by full exclusion pretrial. Plaintiff has failed to show that potential prejudice substantially outweighs Beard's relevant testimony.

1.h.: Dr. Edward Crutchfield. Plaintiff contends that Dr. Crutchfield should be excluded because (1) he was not on Defendants' initial disclosures; (2) there was no disclosure of any expert opinion under Rule 37(c); (3) there was no disclosure of the basis for an expert opinion under F.R.E. 703; (4) his testimony is likely to contain hearsay excludable under F.R.E. 802; and (5) any relevance to his testimony is substantially outweighed by the likelihood of prejudice under F.R.E. 403.

The Court finds that Plaintiff knew of Dr. Crutchfield's existence as he was disclosed in Plaintiff's own supplemental disclosures, therefore, Dr. Crutchfield's earlier non-disclosure was harmless. Dr. Crutchfield is the physician who ordered medication for Plaintiff while he was at the HCDC. Defendants have indicated that Dr. Crutchfield's testimony will not involve any expert opinions but will instead involve his interaction with Plaintiff which includes an examination of Plaintiff and the medication ordered for Plaintiff, therefore, no disclosure of an expert opinion is required. Any potential hearsay he may testify to is better left for trial rather than by full exclusion pretrial. Plaintiff has failed to show that potential prejudice substantially outweighs Dr. Crutchfield's relevant testimony.

1.i.: Terri McGuire; 1.s.: Miles Snyder; 1.t.: Jennifer Cain; 1.u.: T. Devins. Plaintiff and Defendants address these four individuals together and the Court will do the same. Plaintiff

contends that these individuals should be excluded because (1) they were not on Defendants' initial disclosures; (2) they lack personal knowledge under F.R.E. 602; (3) their testimony is likely to contain hearsay excludable under F.R.E. 802; and (4) any relevance to their testimony is substantially outweighed by the likelihood of prejudice under F.R.E. 403.

The Court finds that Plaintiff knew of these witnesses' existence as they were disclosed in Plaintiff's own supplemental disclosures, therefore, their earlier non-disclosure was harmless. These witnesses are employees of the HCDC and would testify to personal observations and conversations with Plaintiff, as such, the Court finds they have sufficient personal knowledge to testify. Plaintiff does not identify any specific potential hearsay issues. As such, any potential hearsay they may testify to is better left to be dealt with on a case by case basis at trial rather than by full exclusion pretrial. Plaintiff has failed to show that potential prejudice substantially outweighs these witnesses' relevant testimony.

1.v.: Krystal Souders; 1.w.: Theda Owens. Plaintiff and Defendants address these two individuals together and the Court will do the same. Plaintiff contends that these individuals should be excluded because (1) they were not on Defendants' initial disclosures; (2) they lack personal knowledge under F.R.E. 602; (3) their testimony is likely to contain hearsay excludable under F.R.E. 802; and (4) any relevance to their testimony is substantially outweighed by the likelihood of prejudice under F.R.E. 403.

The Court finds that Plaintiff knew of Souders existence as she was disclosed in Plaintiff's own supplemental disclosures, therefore, her earlier non-disclosure was harmless. As for Owens, the nursing chart entries made by these two witnesses have already been provided to Plaintiff through the discovery process. Therefore, the Court finds that Plaintiff was aware of Owens'

existence and the content of her expected testimony. Both of these witnesses were nurses who attended to Plaintiff and signed medical records associated with his care, as such, the Court finds they have sufficient personal knowledge to testify. Plaintiff does not identify any specific potential hearsay issues. As such, any potential hearsay they may testify to is better left to be dealt with on a case by case basis at trial rather than by full exclusion pretrial. Plaintiff has failed to show that potential prejudice substantially outweighs these witnesses' relevant testimony.

1.f.: S. Ward. Plaintiff contends that Ward should be excluded because (1) she was not on Defendants' initial disclosures; (2) she lacks personal knowledge under F.R.E. 602; (3) her testimony is likely to contain hearsay excludable under F.R.E. 802; and (4) any relevance to her testimony is substantially outweighed by the likelihood of prejudice under F.R.E. 403.

The Court finds that although Ward was not listed in either party's initial disclosures that Plaintiff knew of her existence, as she was identified in documents provided to Plaintiff in discovery. Ward is an employee of the Clark County Jail and was present when Plaintiff claimed to have been injured by Officer Cook at the Clark County Jail. As such, the Court finds that her non-disclosure was harmless and that she has sufficient personal knowledge to testify. Plaintiff does not identify any specific potential hearsay issues. As such, any potential hearsay Ward may testify to is better left for trial rather than by full exclusion pretrial. Plaintiff has failed to show that potential prejudice substantially outweighs Ward's relevant testimony.

1.p.: Dr. E. Austin Johnson; 1.q.: Dr. Wilhere. Plaintiff contends that these witnesses should be excluded because (1) they were not on Defendants' initial disclosures; (2) there was no disclosure of any expert opinion under Rule 37(c); (3) there was no disclosure of the basis for an expert opinion under F.R.E. 703; (4) their testimony is likely to contain hearsay excludable under F.R.E. 802; and

(5) any relevance to their testimony is substantially outweighed by the likelihood of prejudice under F.R.E. 403.

Dr. Johnson and Dr. Wilhere were the jail physician and jail dentist, respectively, of the Clark County Jail during Plaintiff's incarceration at that facility. They treated Plaintiff when he was incarcerated at that facility. The Court finds that the existence of these witnesses and the content of their likely testimony were both known to Plaintiff, therefore, their non-disclosure was harmless. Defendants have indicated that these witnesses' testimony will not involve any expert opinions but will instead involve their interactions with Plaintiff and his subsequent treatment, therefore, no disclosure of an expert opinion is required. Any potential hearsay they may testify to is better left to be dealt with on a case by case basis at trial rather than by full exclusion pretrial. Plaintiff has failed to show that potential prejudice substantially outweighs these witnesses relevant testimony.

1.y.: Confidential Jail Informant. The Defendant has stated it will not attempt to call the Confidential Informant.

2.a.6.: Letter or Correspondence from Mitchell Jackson; 2.d.6.: Letters or Correspondence from Mitchell Jackson. These documents are medical request forms, miscellaneous request forms, grievances and other general correspondence with jail staff at the HCDC and Clark County Jail. Plaintiff has failed to offer any specific objections to these documents but has instead appeared to have filed an objection claiming that the documents' designations are too vague to allow him to properly object. Therefore, the Court finds that any objection as to these documents is reserved for trial.

2.a.: HCDC jail file; 2.a.4.: Progress Notes dated December 14, 2005; 2.a.7.: X-rays of Mitchell Jackson; 2.a.c.: Contract Between HCDC and Clark County; 2.d.: Mitchell Jackson's Clark

County inmate file; 2.d.5.: Clark County Incident Report; 2.d.7.: Informant Information; 2.e.: Convictions pertaining to Mitchell Jackson; 2.f.: Pleadings from Indiana Case. The Court has already addressed the exclusion of these exhibits above.

Therefore, the Court **RESERVES FOR TRIAL** the exclusion of each witness and exhibit listed in DN 106 to the extent it is not addressed in a separate motion in limine.

**DN 107 Plaintiff's Motion for Judicial Estoppel**

"The judicial estoppel doctrine protects the integrity of the judicial process by preventing a party from taking a position inconsistent with one successfully and unequivocally asserted by the same party in a prior proceeding." Reynolds v. Comm'r, 861 F.2d 469, 472 (6th Cir. 1988) (citing Edwards v. Aetna Life Ins. Co., 690 F.2d 595, 598 (6th Cir. 1982). The purpose of this doctrine "is to protect the judiciary, as an institution, from the perversion of judicial machinery." Edwards, 690 F.2d at 599 (citing Allen v. Zurich Ins. Co., 667 F.2d 1162, 1167 (4th Cir.1982)). Plaintiff claims that Defendants have advocated, in prior pleadings, that "[t]he incident leading to the personal injury claim occurred on November 24, 2005" and that "It is undisputed that plaintiff . . . was then seen by a dentist on November 29, 2005 . . . [and t]he dentist explained to Mr. Jackson that his tooth could not be saved and he would need a partial plate." Plaintiff argues that "Defendants should not be heard at trial to advocate any change in those positions."

Defendants contend that the quoted phrases cited by Plaintiff are mischaracterized and taken out of context from Defendants' appellate brief in this matter. Defendants argue, and the Court agrees, that Plaintiff is attempting to establish that Defendants have admitted fault in the matter. Defendants contend that when read in full, in the context of the entire appellate brief, the quoted phrases do not stand for that proposition whatsoever. Defendants argue that they have denied

liability consistently throughout the litigation process. The Court again agrees with Defendants.

These phrases contain numerous omissions, as indicated by the ellipses, and are not representative of Defendants' initial statements in the brief. In fact, throughout the brief Defendants repeat their belief that Plaintiff was injured prior to arriving at the HCDC. Accordingly, the Court **DENIES** Plaintiff's motion.

**DN 120 Plaintiff's Motion to Strike Defendants' reply DN 116**

Plaintiff has filed a motion to strike Defendants' reply [DN 116] on the ground that the Scheduling Order [DN 78] states that there will be no replies to motions in limine. The Court agrees that a reply is not proper under the terms of the Scheduling Order. Therefore, the Court **GRANTS** Plaintiff's motion and strikes Defendants' reply [DN 116].

cc: Counsel