UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

**CIVIL ACTION NO. 4:05-CV-00186-JHM**

**MITCHELL L. JACKSON**                                             **PLAINTIFF**

**V.**

**RON HERRINGTON, et. al.**                                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [DN 126], Defendants' Motion to Dismiss on the Pleadings [DN 100], Plaintiff's Motion to Amend [DN 115], and Plaintiff's Motion for Sanctions [DN 124]. Fully briefed, these matters are ripe for decision.

## I. BACKGROUND

In November 2005, Plaintiff Mitchell L. Jackson was transferred from the Clark County Jail in Indiana to the Henderson County Detention Center (HCDC) in Kentucky. Upon arrival at the HCDC, Plaintiff was strip searched by Defendant Deputy Jailer Anthony Willett. Plaintiff objected to the search and asked Defendant Willett and Defendant Deputy Jailer Patty McCuiston that he be allowed to speak with their superiors. Defendants refused his request.

Then on November 24, 2005, Plaintiff alleges that Defendant Deputy Jailer Nathan Francis struck him in the mouth with a cell door. Plaintiff alleges that while Defendant Francis was conducting his rounds and counting the inmates that Plaintiff stepped toward the open door of his cell to ask a question. Defendant Francis, not seeing Plaintiff step forward, slid the cell door shut, thereby striking Plaintiff in the mouth and severely damaging his teeth.

Plaintiff was taken to the infirmary where he was seen by a nurse. Five days later, Plaintiff

was seen by the detention center dentist who told him that one of his teeth could not be saved and would need to be replaced. Plaintiff requested that the HCDC replace his tooth. He did this through letters to Defendant Jailer Ron Herrington and Defendant Chief Deputy Jailer Freddie Rowland as well as through various grievance forms.

Defendants Herrington and Rowland investigated Plaintiff's claim and contacted the Clark County Jail. While discussing Plaintiff's alleged injury with Captain Sam Beard, Defendants learned that Plaintiff had made an identical claim that he had been hit in the mouth with a cell door immediately before his transfer from the Clark County Jail. That claim was investigated by Captain Beard who received a note from a confidential informant stating that Plaintiff was actually injured in a fist fight with another inmate who broke some of his teeth. Defendants also learned that Based on this note and the circumstances surrounding the incident with the cell door, Captain Beard believed that Plaintiff's injury claim was false. Captain Beard refused to repair Plaintiff's teeth. Thereafter, Plaintiff was transferred to the HCDC.

Upon learning of the alleged injury in the Clark County Jail and the subsequent investigation into that injury, Defendants also refused to repair or replace Plaintiff's broken teeth. During the remainder of his incarceration at the HCDC, Plaintiff continued to receive pain medication in the form of oragel and ibuprofen but did not receive the replacement tooth that he requested. After his release, Plaintiff saw a private dentist who repaired his teeth. In December 2005, Plaintiff filed a *pro se* Complaint alleging constitutional violations in the form of his strip search, the strip search policy of the HCDC, the failure to adhere to the grievance policy of the HCDC, and deliberate indifference to his medical needs. Plaintiff then filed an Amended Complaint alleging a negligent personal injury claim in addition to the same constitutional claims. Plaintiff also filed a concurrent

suit against defendants in the Clark County Jail alleging the same negligent injury.

This Court dismissed Plaintiff's suit in three separate orders [DN 34, 53, 54]. The Sixth Circuit Court of Appeals affirmed the dismissal of the constitutional claims but reversed and remanded the negligent personal injury claim, Count I, back to this Court. That claim is now ready for trial.

## II. DISCUSSION

**A. Motion to Dismiss for Lack of Subject Matter Jurisdiction**

Defendants have filed a motion to dismiss [DN 126] for lack of subject matter jurisdiction. Plaintiff's Amended Complaint invokes diversity jurisdiction and, in the alternative, supplemental jurisdiction over his negligence claim. Defendants contend that they recently discovered that diversity jurisdiction is likely not appropriate because Plaintiff has admitted that he is a Kentucky resident. Pl's Mot. to file 2nd Amend. Compl., Attach. 1. Defendants also contend that supplemental jurisdiction is not appropriate because all pending federal claims have been dismissed. Defendants argue that the result of Plaintiff's admission is that subject matter jurisdiction is lacking and that Plaintiff's remaining state law claim should be dismissed.

The Court finds that regardless of where Plaintiff is domiciled now, at the time of the filing of his suit he was a resident of Indiana. Therefore, diversity jurisdiction is appropriate and is not destroyed. Grupo Dataflux v. Atlas Global Group, L.P., 541 U.S. 567, 570 (2004) ("It has long been the case that 'the jurisdiction of the court depends upon the state of things at the time of the action brought.'") (quoting Mollan v. Torrance, 9 Wheat. 537, 539 (1824)). Notwithstanding, the Court also finds that supplemental jurisdiction over this action is appropriate. A district court has supplemental jurisdiction over any claims "that are so related to claims in the action within such

3

original jurisdiction that they form part of the same case or controversy." 28 U.S.C. § 1367. The Supreme Court in United Mine Workers of America v. Gibbs, "recognized that pendent jurisdiction is a doctrine of discretion" and that "[i]ts justification lies in considerations of judicial economy, convenience and fairness to litigants." 383 U.S. 715, 727 (1966). The remaining negligent personal injury claim in this litigation forms part of the same case and controversy as Plaintiff's dismissed constitutional claims because it was allegedly the cause of the medical problem that prompted the deliberate indifference.

Furthermore, an examination of the Gibbs factors reveals that the exercise of supplemental jurisdiction is appropriate under the given circumstances. This action was filed over five years ago. Discovery has long since been closed and dispositive motions have been filed by both parties and adjudicated by the Court. Plaintiff's case has been dismissed and appealed, with an order by the Sixth Circuit remanding this negligence action back to this Court. The docket for this case reveals 136 entries, including numerous motions in limine and pretrial disclosures. Furthermore, the trial date for this matter is only days away. The Court finds that the parties have invested substantial time, energy, and resources to the determination of this case and that all parties appear ready and able to effectively try this case to a jury in the Western District of Kentucky. Examining the judicial economy, convenience, and fairness to the litigants, the Court finds that all of these factors favor the Court accepting supplemental jurisdiction. The Court finds that it has diversity jurisdiction over this action, and notwithstanding that jurisdiction, it would exercise supplemental jurisdiction over Plaintiff's negligence claim and, therefore, **DENIES** Defendants' motion to dismiss for lack of subject matter jurisdiction.

**B. Motion to Dismiss under Rule 12©**

Defendants have filed a Fed. R. Civ. P. 12(c) motion to dismiss. The standard of review applicable to motions for "judgment on the pleadings" under Fed. R. Civ. Pro. 12(c) is the same standard applicable to motions to dismiss under Rule 12(b)(6). Grindstaff v. Green, 133 F.3d 416, 421 (6th Cir.1998). "In reviewing the motion, the Court must construe the complaint in the light most favorable to the plaintiff, accept all of the complaint's factual allegations as true, and determine whether the plaintiff undoubtedly can prove no set of facts in support of his claim that would entitle him to relief." Id. at 512. However, the Court "need not accept as true legal conclusions or unwarranted factual inferences." Mixon v. Ohio, 193 F.3d 389, 400 (6th Cir. 1999). Judgment in the defendant's favor is warranted if a plaintiff cannot prove any set of facts in support of her claims that would entitle her to relief. Id.

Plaintiff's Amended Complaint specifically adopts and incorporates the factual allegations made in the *pro se* Complaint as originally filed. Within and attached to the *pro se* Complaint are factual allegations in the form of grievance forms, an incident report, and various correspondence between Plaintiff and the staff of the HCDC. In considering the Rule 12(c) motion on the pleadings, the Court is entitled to examine these documents. Amini v. Oberlin Coll., 259 F.3d 493, 502 (6th Cir. 2001)("In determining whether to grant a Rule 12(b)(6) motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, *and exhibits attached to the complaint*, also may be taken into account." ).

Defendants have argued that the personal negligent injury claim for striking Plaintiff with the cell door is the only remaining claim and that that claim was only alleged against Defendant Francis. Plaintiff has responded arguing against dismissal claiming to have also pled a negligent refusal to treat claim in Count I against all Defendants.

5

Before the Court can address the Rule 12(c) motion it must first decide whether Plaintiff has sufficiently pled an action for refusal to treat in Count I of his Amended Complaint, under the heading of "Negligent Personal Injury." Under Fed. R. Civ. P. 8, Plaintiff must plead, among other things, a short and plain statement of the claim showing that the pleader is entitled to relief. Plaintiff contends that he has done just that by pleading in Count I that "Defendants had a duty to avoid negligent injury to the person of plaintiff, defendants having voluntarily or by legal mandate taken the custody of plaintiff so as to deprive the plaintiff of his normal opportunities for protection and for medical treatment," and that "Defendants breached their duties to plaintiff, which proximately caused personal injury to plaintiff, including dental, oral and maxillofacial injuries." Pl's. Amend. Compl. X-XI. Plaintiff contends that these paragraphs in Count I of the Amended Complaint allege two separate negligence claims: (1) a claim for negligent personal injury as a result of being hit in the mouth with a cell door; and (2) a free-standing negligent refusal to treat claim that exists regardless of how Plaintiff came about to be injured.

The Court finds Plaintiff's argument unsupported by the record and the manner in which this case has been practiced over nearly five years of litigation. Until about a month before trial, Plaintiff, Defendants, and the Court had treated Count I as a negligent personal injury claim for Plaintiff being struck in the mouth with a cell door by Deputy Francis. This conclusion is supported by a reading of the Amended Complaint itself. In Count I, Plaintiff alleges that "Defendants had a duty to avoid negligent injury to the person of plaintiff" and that "Defendants breached their duties to plaintiff, which proximately caused personal injury to plaintiff, including dental, oral and maxillofacial injuries." Pl's. Amend. Compl. X-XI. Plaintiff then states in Count II that "[a]fter plaintiff sustained personal injury, while in the care, custody and control of the defendants, plaintiff

6

requested medical treatment[,]" but that "Defendants delayed, denied, deferred, or refused the medical treatment needed by the plaintiff." Pl's. Amend. Compl. XIV-XV. This demonstrates that in Count I Plaintiff was seeking to recover damages for the alleged personal injury (being hit in the mouth with a cell door) and in Count II he was seeking to recover damages for Defendants alleged refusal to treat him after he received that injury. However, Count II of the Amended Complaint only stated a deliberate indifference claim and it was dismissed. That dismissal was then affirmed by the Sixth Circuit Court of Appeals [DN 69].

Count I simply alleges a claim that Defendants had a duty of care to prevent personal injury to Plaintiff and that they breached that duty by hitting him in the mouth with a cell door. That interpretation of the claim is supported by the manner in which the parties have litigated this case as well as by the manner in which this Court and the Sixth Circuit Court of Appeals have addressed the case. After the Court dismissed Plaintiff's *pro se* Complaint, Plaintiff retained counsel who filed a motion to reconsider. In that motion, Plaintiff argued that the Court should reconsider his complaint because the screening order did not consider Plaintiff's negligent personal injury claim. Pl's. Mot. to Reconsider 3. Under the heading of "Negligent Personal Injury[,]" (which mirrors the heading he used for Count I) Plaintiff states "[i]t must be accepted as true, for present purposes, that the defendant corrections officer, who 'accidentally struck inmate Jackson, Mitchell in the mouth with the door of cell 214'[] caused plaintiff personal injury. This claim was not considered in the screening order, and reconsideration is sought." Id. Plaintiff continued on arguing that he has a negligence claim alleged in the *pro se* Complaint "for the negligence of the officers that caused plaintiff to have teeth knocked out." Id. at 10. Noticeably in his motion to reconsider, Plaintiff never references a negligent refusal to treat claim.

7

After the Court partially granted Plaintiff's motion to reconsider, Plaintiff filed his Amended Complaint. Defendants then filed a motion to dismiss the negligent personal injury claim contained in Count I as barred by the statute of limitations. In his response, Plaintiff argued that his claim for personal injury to his tooth related back to his amended pleadings. In its opinion dismissing Count I [DN 34], the Court accepted Plaintiff's position in that respect and recognized that the

> personal injury claim set forth in Count I of the amending pleading relates back to the original pleading since it is based on the same occurrence alleged in the Plaintiff's original complaint - specifically, that he was injured by Deputy Nathan Francis when a door the Deputy opened hit the Plaintiff in the mouth.

Memorandum Opinion & Order, July 5, 2007, at 4. Nevertheless the Court dismissed Count I for other reasons.

In his motion to reconsider the dismissal of Count I [DN 35], Plaintiff never discusses the existence of a negligent refusal to treat claim or contends that the Court erred by failing to address such a claim. In the Court's opinion, the reason he did not is because Plaintiff pled Count II of the Amended Complaint as a claim for deliberate indifference in an attempt to recover for the refusal to treat his injuries. This fact is further reinforced by Plaintiff's own cross-motion for partial summary judgment [DN 47]. In that motion, Plaintiff states that

> Count II seeks redress for the denial of treatment for plaintiff's dental injury, while in defendants' custody and care. **An earlier Order here eliminated plaintiff's claim in Count I that alleged that defendants' negligence had caused the injury to plaintiff's tooth. That partial dismissal of Count I took away the issue of defendants' responsibility for the injury itself, but the claims over the plaintiff being denied proper treatment for his dental condition, as set forth in Count II, remained.**

Pl's. Cross-Mot. for Partial Summ. J., at 6 (emphasis added).

Perhaps the most convincing evidence of Plaintiff's failure to allege and litigate a negligent refusal to treat claim under Count I of the Amended Complaint is found in Plaintiff's own

Appellant's Brief to the Sixth Circuit Court of Appeals. In that brief, Plaintiff again states that "Counts I and II were claims for knocking out the plaintiff's tooth, and for delaying and denying treatment of that injury." Pl's. Appellant Brief, at 13. Plaintiff then argues that this Court improperly dismissed Count I and in support of that argument states that "Plaintiff's original, *pro se* Complaint pleaded a Rule 8(a) 'short and plain statement' that Corrections Officer Francis negligently knocked out plaintiff's tooth with a cell door on Nov, [sic] 24, 2005." Id. at 39. Plaintiff then states that "[a]n Amended Complaint promptly was filed . . . [that] pleaded in Count I the injurious and negligent act of defendant Francis, which defendants moved to dismiss." Id. at 42. Furthermore, Plaintiff argued that his "negligence claim against Officer Francis was dismissed[,]" Id. at 41, not that he had a negligent refusal to treat claim against any other Defendants that was improperly dismissed. In fact, nowhere in Plaintiff's Appellant's Brief or Reply Brief is there an argument that a negligent refusal to treat claim was ever alleged or improperly dismissed. All that Plaintiff requested of the Sixth Circuit was that it reverse and remand his personal negligent injury claim against Defendant Francis for hitting him in the mouth with a door. As such, that was the only relief the Sixth Circuit granted him, and that is the only claim that should proceed to trial on remand.

It was only after the Sixth Circuit affirmed the dismissal of Plaintiff's deliberate indifference for refusal to treat claim in Count II that Plaintiff first contend he had a viable free standing negligent refusal to treat claim alleged in Count I. Even then, Plaintiff waited almost eight months after Count I was remanded, and only one month before trial, to assert such a contention. Plaintiff's contention at this time is simply an attempt to revive a previously dismissed claim.

This belief is supported by comparing Plaintiff's dismissed deliberate indifference claim in Count II of his Amended Complaint with the negligent refusal to treat claim in Count II of the

9

proffered Second Amended Complaint. Looking at these two counts, the Court finds several instances where Plaintiff simply took entire paragraphs from the dismissed deliberate indifference claim and then re-alleged them in his new negligent refusal to treat claim.[1] Even the titles of the two different refusal to treat claims are strikingly similar.[2] This, coupled with the fact Plaintiff failed to advocate the existence of this claim until after his deliberate indifference claim was dismissed, demonstrates that Plaintiff is simply attempting to revive an already dismissed claim.

The Court does not believe that Count I of the Amended Complaint alleges a free standing negligent refusal to treat claim when Count I is read in context with the *pro se* Complaint, Count II of the Amended Complaint, and the various pleadings addressing the merits of Count I. The allegations in the *pro se* Complaint and the Amended Complaint do not sufficiently allege a claim that Defendants are individually liable for Plaintiff's injuries, regardless of where or by whose hand those injuries occurred. Therefore, the Court finds that Plaintiff only has one negligent personal injury claim; that he was struck in the mouth with a cell door by Defendant Nathan Francis. Any evidence related to delay or denial of treatment, in order to be relevant, must relate to the Plaintiff's pain and suffering as a result of allegedly being injured at the Henderson County Detention Center by Deputy Francis.

The Court will proceed with the analysis of Defendants' Rule 12(c) motion to dismiss on the pleadings based on the existence of that negligent injury claim alone.

---

[1] The Court will list the corresponding paragraphs placing the paragraphs from the dismissed deliberate indifference claim first in roman numerals followed by the matching paragraphs in the proffered negligent refusal to treat claim in Arabic numerals: XIV and XVII-31 and 34; XV-33; XXIII-52; XXIV-53; XXV-54.

[2] Neglect of Need for Treatment for Serious Personal Injury and Neglect of Need for Treatment, and Denial of Corrective Care

**1. Nathan Francis**

The allegations against Defendant Francis in the *pro se* Complaint and Amended Complaint are that he negligently closed a cell door without looking, thereby striking Plaintiff in the mouth with the door and causing his teeth to be knocked loose. These facts, taken as true, clearly allege a claim for negligent personal injury against Defendant Francis. Therefore, the Court **DENIES** the motion as to Defendant Francis.

**2. Ron Herrington and Freddie Rowland**

There are no allegations that either Defendant Herrington or Defendant Rowland were involved with the alleged injury suffered by Plaintiff when he was hit with the cell door. To the extent Plaintiff may claim that the Deputy Jailer who caused the injury was under the control and command of Defendants Herrington and Rowland, the Court finds such an argument unpersuasive. Kentucky law is clear, "[p]ublic officers are responsible only for their own misfeasance and negligence and are not responsible for the negligence of those employed by them if they have employed persons of suitable skill." Yanero v. Davis, 65 S.W.3d 510, 528 (Ky. 2001). There are no allegations that Defendant Francis was not of suitable skill for his position, therefore, any negligent actions he may have undertaken are not actionable against his superiors.

Having found that there are no allegations that either Defendant Herrington or Defendant Rowland were involved with personally injuring Plaintiff's mouth with a cell door, the Court **GRANTS** the motion to dismiss as to Defendant Herrington and Defendant Rowland.

**3. Patty McCuiston and Anthony Willett**

The allegations against Defendant McCuiston in the *pro se* Complaint and Amended Complaint are that she was the intake officer when Plaintiff was transferred to the HCDC and that

she denied Plaintiff the opportunity to speak to a superior when he was subjected to a strip search. The allegations against Defendant Willett are that he personally subjected Plaintiff to an unconstitutional strip search and also denied Plaintiff the opportunity to speak to a superior. There are no allegations that either McCuiston or Willett were involved with allegedly striking Plaintiff with a cell door. Therefore, the Court **GRANTS** the motion to dismiss as to Defendant McCuiston and Defendant Willett.

**C. Motion for Second Amended Complaint**

Plaintiff has filed a motion seeking leave of the Court to file a Second Amended Complaint. Plaintiff contends that leave to file the Second Amended Complaint should be granted because the Second Amended Complaint adds no new parties or claims but instead removes dismissed claims and splits the previously pleaded Count I negligent personal injury claim into two separate claims, one for negligent personal injury, and another for negligent refusal to treat.

F.R.C.P. 15(a) states that "A party may amend its pleading once as a matter of course . . . In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The Court should freely give leave when justice so requires." The determination of whether the circumstances of a case are such that justice would require the allowance of an amendment is committed to the sound discretion of the district court. Hayden v. Ford Motor Co., 497 F.2d 1292, 1294 (6th Cir. 1974). A trial court may consider a number of factors in making this determination, including undue delay, bad faith or dilatory motive on the part of the movant, undue prejudice, futility of the amendment, or the repeated failure to cure deficiencies by amendments previously allowed. Foman v. Davis, 371 U.S. 178, 182 (1962). In the absence of any of these factors, a plaintiff should be afforded the opportunity to amend her complaint. Id.

The Court notes that because Plaintiff seeks leave to amend his complaint after the deadline imposed by the Court's Amended Scheduling Order [DN 37], Plaintiff must first show good cause for modifying the Scheduling Order before the Court will consider whether such amendment is proper under Fed. R. Civ. P. 15(a)(2). Fed. R. Civ. P. 16(b)(4); see also Leary v. Daeschner, 349 F.3d 888, 909 (6th Cir. 2003) ("Once the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)."). Notwithstanding Plaintiff's failure to address Rule 16's good cause requirement, the Court finds that Plaintiff should not be permitted to amend his complaint a second time because it would be futile and prejudicial to Defendants.

Plaintiff's Second Amended Complaint attempts to outline two negligence claims Plaintiff believes he pleaded in Count I of the Amended Complaint. However, the Court has already found that Count I of the Amended Complaint did not plead a negligent refusal to treat claim. Thus, a Second Amended Complaint that more clearly outlines such a claim is not only futile and unnecessary, but also extremely prejudicial. Plaintiff argues that the Second Amended Complaint is not prejudicial because it does not add a new cause of action. The Court disagrees.

As discussed above, Plaintiff's Amended Complaint does not allege a negligent refusal to treat claim. The Court finds that the inclusion of a negligent refusal to treat claim for the first time at this stage of the litigation would be prejudicial to Defendants because it would add a new claim only weeks before trial of a suit that was originally filed over five years ago. Evidence of this prejudice can be found in Defendants' inability to assert the defense of official qualified immunity prior to trial. This claim would also alter Defendants' defense strategy, which is grounded in the theory that Plaintiff suffered his injury prior to his arrival at the HCDC. Allowing Plaintiff to amend

13

his complaint would add a new theory of liability that seeks to hold Defendants liable regardless of where or how Plaintiff received his injury. This clearly alters that manner in which Defendants would prepare and defend this trial, and as such, the Second Amended complaint would be prejudicial to Defendants. Therefore, the Court **DENIES** Plaintiff's motion to file a Second Amended Complaint.

**D. Motion for Sanctions**

Plaintiff filed a response [DN 122] to Defendants' motion in limine [DN 93] and in that response Plaintiff moved for sanctions under Fed. R. Civ. P. 37(c)(1). Plaintiff then filed a separate motion seeking sanctions [DN 124], which incorporated by reference the arguments he raised in [DN 122]. In his motion for sanctions, Plaintiff has sought the preclusion of evidence from use at trial, the production of evidence prior to trial, reimbursement for correction of the record, an order that the jury be informed of Defendants' alleged non-disclosure, and a partial waiver of the attorney-client privilege. The Court will address these in turn.

Plaintiff first seeks to exclude from use at trial Defendants exhibit 2.c, HCDC Contract with Clark County. The Court has already discussed this piece of evidence in its concurrent opinion addressing the parties' motions in limine and found that it was not required to be disclosed because it will only be used as impeachment. The Court has also precluded Defendants from using it in their case-in-chief. Plaintiff also claims that this piece of evidence was subject to a Rule 34 request for production. However, Plaintiff provides no evidence to support his claim and the Court will not grant his request for sanctions on mere allegations.

Plaintiff next seeks to exclude Defendants exhibit 2.f., the dismissed Clark County Pleadings. The Court has already addressed this piece of evidence in its concurrent opinion addressing the

14

parties' motions in limine and found that its non-disclosure was harmless.

Plaintiff next argues that Defendants falsely claimed to have never seen Plaintiff's dental bills in the amount of $4,383.00. However, the Court believes that Plaintiff has misunderstood Defendants' motion on this issue and that Plaintiff's claim on this issue has no merit.

Plaintiff's final claim for sanctions is that relevant evidence has not been disclosed which includes the statement of prisoner's rights signed by Plaintiff, video surveillance of Plaintiff in the HCDC intake area, and X-rays of Plaintiff's mouth taken by Defendants. Furthermore, Plaintiff argues that he has yet to see his original jail file, as held by Defendants. The Court ordered Defendants to produce the original file for Plaintiff's inspection. Defendants did so and Plaintiff was able to inspect the entire original file. At a hearing following that inspection, Plaintiff's counsel informed the Court that his inspection of the original file had revealed over thirty (30) documents not previously disclosed including an X-ray taken of Plaintiff's injury on November 29, 2005.

Plaintiff requested some time to contemplate whether he would seek a continuance as a result of this non-disclosure violation. A telephonic hearing was conducted two days later. Plaintiff did not seek a continuance, but he requested various sanctions under Rule 37. Specifically, Plaintiff has requested that Defendants be precluded from using the November 29, 2005 X-ray to support his defenses. Plaintiff has also requested that Defendants be precluded from cross-examination of Dr. Smith, the dentist who took the X-ray or from using Dr. Smith as an expert to interpret the X-ray. Plaintiff then reserved the right to seek other sanctions at the conclusion of the trial. The Court concludes that Defendants shall not be permitted to use the November 29, 2005 X-ray to support their defenses or to use Dr. Smith as an expert regarding the X-ray. However, precluding

Defendants from cross-examining Dr. Smith at all regarding information that has long been known and available to both parties as a result of the discovery process is not an appropriate sanction. Therefore, the Court **GRANTS** Plaintiff's request that Defendants be precluded from using the November 29, 2005 X-ray to support their defenses or to use Dr. Smith as an expert to interpret the X-ray, and **DENIES** Plaintiff's request that Defendants not be permitted to cross-examine Dr. Smith. The Court **RESERVES** the issue of other appropriate sanctions for a later date.

The final issue raised in Plaintiff's motion for sanctions is a requested waiver of the attorney-client privilege regarding the disclosure of an email between Defendant Herrington and defense counsel that Plaintiff discovered during an earlier inspection of the jail file. Whenever a party discloses a communication covered by the attorney-client privilege, that disclosure will effect a waiver of the privilege regarding that communication and any undisclosed communication or information in a Federal proceeding only if: (1) the waiver is intentional; (2) the disclosed and undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together. Fed. R. Evid. 501(a).

The Court finds that Plaintiff's request fails the first prong of Rule 501. Plaintiff has put forth no evidence that this communication was disclosed intentionally. Plaintiff does not identify any other communications of this nature that were found in the file or any other indication that Defendants intended to disclose that privileged communication. The Court finds that Plaintiff has not demonstrated that the disclosure of this one email was intentional and that it requires a waiver of all communications and information that concern the same subject matter. Notwithstanding that fact, Plaintiff has not shown that fairness concerns favor the disclosure of other communications and information associated with the email. Therefore, the Court **DENIES** Plaintiff's request for waiver

16

of the attorney-client privilege.

## III. CONCLUSION

For the reasons set forth above, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss for Lack of Subject Matter Jurisdiction [DN 126] is **DENIED**.

**IT IS FURTHER ORDERED** that Defendants' Motion to Dismiss on the Pleadings [DN 100] is **GRANTED IN PART** as to Defendants Ron Herrington, Freddie Rowland, Patty McCuiston, and Anthony Willett, and is **DENIED IN PART** as to Defendant Nathan Francis.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Amend [DN 115] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Sanctions [DN 124] is **GRANTED IN PART** as to precluding Defendants use of the November 29, 2005 X-ray to support their defenses and as to precluding Defendants use of Dr. Smith as an expert, **DENIED IN PART** as to precluding Defendants from cross-examining Dr. Smith and as to the request for a waiver of the attorney-client privilege, and **RESERVED IN PART** as to other appropriate sanctions.

cc: counsel of record